1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE L. CASABLANCA and<br>JESSIE N. CRUZ,<br>Defendants. | NO.      MJ20-526<br><br>COMPLAINT FOR VIOLATIONS OF<br>18 U.S.C. §§ 922(g)(1) and 924 (a)(2) AND<br>21 U.S.C. §841 |

BEFORE The Honorable Paula L. McCandlis, United States Magistrate Judge, United States Courthouse, Seattle, Washington.

## COUNT ONE

### *(Felon in Possession of Firearms)*

On or about June 30, 2020, in Everett, within the Western District of Washington, the Defendant JOSE CASABLANCA, knowing that he had been convicted of the following crimes that under federal law prohibits him from possessing firearms or ammunition, to wit:

    i.      *Robbery in the First Degree and Burglary in the First Degree,* in cause number 06-1-01575-9, in the Superior Court of Snohomish County, on or about August 30, 2006;

CASABLANCA and CRUZ/COMPLAINT – 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

    *ii.*      *Possession of a Controlled Substance with Intent – Cocaine,* in cause number 11-1-00365-0, in the Superior Court of Snohomish County, on or about September 1, 2011;

did knowingly possess, in and affecting interstate and foreign commerce, a firearm, to wit, a Palmetto State Armory, Model PA-15, 5.56 caliber pistol, bearing serial number LW363080.

All in violation of Title 18, United States Code, Section 922(g)(1).

<u>**COUNT TWO**</u>

***(Felon in Possession of a Firearm)***

On or about July 25, 2020, in Lynnwood, within the Western District of Washington, the Defendant JOSE CASABLANCA, knowing that he had been convicted of the following crimes that under federal law prohibits him from possessing firearms or ammunition, to wit:

    *i.*      *Robbery in the First Degree and Burglary in the First Degree,* in cause number 06-1-01575-9, in the Superior Court of Snohomish County, on or about August 30, 2006;

    *ii.*      *Possession of a controlled substance with intent – Cocaine,* in cause number 11-1-00365-0, in the Superior Court of Snohomish County, on or about September 1, 2011;

did knowingly possess, in and affecting interstate and foreign commerce, firearms, to wit, (1) A.D.C., Model 1, .45 Colt caliber/.410 bore Derringer-style pistol, bearing serial number 057016, and (2) a Walther, Model PPS M2, 9x19mm Parabellum caliber pistol, bearing serial number AZ2878.

All in violation of Title 18, United States Code, Section 922(g)(1).

<u>**COUNT THREE**</u>

***(Possession of Fentanyl with Intent to Distribute)***

On or about July 25, 2020, in Arlington and Lynnwood, within the Western District of Washington, the Defendants JOSE CASABLANCA and JESSIE CRUZ, did knowingly and intentionally possess, with the intent to distribute a controlled substance, to wit:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a substance
2  controlled under Title 21 of the United States Code.
3      It is further alleged that the substance involved 40 grams or more of a mixture or
4  substance containing a detectable amount of N-phenyl-N-[1- (2-phenylethyl )-4-
5  piperidinyl] propanamide (Fentanyl) or 10 grams or more of a mixture or substance
6  containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-
7  piperidinyl] propanamide (Fentanyl).
8      All in violation of Title 21, United States Code, Sections 841(a)(1) and
9  841(b)(1)(B).

**COUNT FOUR**

***(Possession of Heroin with Intent to Distribute)***

12      On or about July 25, 2020, in Lynnwood, within the Western District of
13  Washington, the Defendants JOSE CASABLANCA and JESSIE CRUZ, did knowingly
14  and intentionally possess, with the intent to distribute, a controlled substance, to wit:
15  heroin, a substance controlled under Schedule I, Title 21, United States Code, Section 812.
16      It is further alleged that the substance involved 100 grams or more of a mixture or
17  substance containing a detectable amount of heroin.
18      All in violation of Title 21, United States Code, Sections 841(a)(1) and
19  841(b)(1)(B).

**COUNT FIVE**

**(*Possession of Firearms in Furtherance of a Drug Trafficking Crime*)**

22      On or about June 30, 2020, in Everett, within the Western District of Washington,
23  the Defendants Jose CASABLANCA and Jessie CRUZ, did knowingly and intentionally
24  possess firearms, to wit, (1) a Palmetto State Armory, Model PA-15, 5.56 caliber pistol,
25  bearing serial number  LW363080 and (2) Smith & Wesson, model M&P-15, .223 caliber
26  machinegun, bearing serial number TH91174, in furtherance of a drug trafficking offense
27  for which he may be prosecuted in a Court of the United States, to wit, Possession of
28  Fentanyl with Intent to Distribute.

CASABLANCA and CRUZ/COMPLAINT – 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

All in violation of Title 18, United States Code, Section 924(c).

The undersigned complainant, being duly sworn, hereby deposes and says as follows:

## AFFIANT BACKGROUND

1.      I, Special Agent Matthew P. Wear, am a duly sworn member of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since February 2005.  I am currently assigned to the Seattle Group V, located in the Seattle, Washington Field Division.  Seattle Group V is responsible for investigating federal firearm violations and combatting violent crime, including gang activity.  As an ATF Special Agent, I have successfully completed the Criminal Investigations Training Program (CITP) and the ATF National Academy Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center.  As a result of my training and experience as a Special Agent for ATF, I am familiar with the federal firearms and narcotics statutes. During the course of my career, I have conducted and/or participated in multiple investigations involving federal firearms, narcotics, and RICO violations.  I have debriefed defendants facing firearms and narcotics charges about their and other violators' criminal activities.  I have received advanced training in the investigation of firearms offenses and I have written, participated in, and have knowledge of the execution of search and arrest warrants for numerous firearms, narcotics, and RICO violations.

2.      The information in this complaint is based on my investigation, along with investigation by other law enforcement officers, conversations with law enforcement officers, and review of law enforcement documents.  It also does not purport to state every fact known to law enforcement, but rather only to establish probable cause to conclude that JOSE L. CASABLANCA and JESSIE N. CRUZ committed the charges set forth above.

## SUMMARY OF PROBABLE CAUSE

3.      In March 2020, Snohomish County Regional Drug Task Force (SRDTF) Detective Brian Emery, working in an undercover capacity, was introduced to an

CASABLANCA and CRUZ/COMPLAINT – 4

individual who identified himself as "Isaac."  Detective Emery was identified by a third party as someone who wanted to purchase narcotics from "Issac."  "Isaac" was later identified as Defendant JOSE CASABLANCA.

4.      On March 5, 2020, Detective Emery received a phone call from CASABLANCA.  During this phone call, Detective Emery could hear a female voice in the background.  During the conversation with CASABLANCA, Detective Emery asked to buy "two" (meaning two ounces of heroin), and verified the price of nine hundred and fifty dollars per ounce, to which CASABLANCA agreed.  CASABLANCA further stated that his "brown" was like "fire."  I am aware as a result of my training and experience that both "brown" and "fire" are commonly used street vernacular to describe heroin ("brown") and its potency ("fire").  During this phone conversation, CASABLANCA also discussed possessing "white girl" (cocaine), "greens and blues" (counterfeit Percocet), and "clear" (methamphetamine).

5.      On March 6, 2020, a controlled purchase operation took place.  SRDTF Detectives Emery and Poff, working in an undercover capacity, met CASABLANCA in the 2300 block of California Street, in Everett, Washington.  Upon arrival, the officers observed that CASABLANCA was in the passenger seat of a vehicle that was being driven by a female, later identified as CRUZ.

6.      Detective Emery approached the vehicle and contacted CASABLANCA at the passenger window.  CASABLANCA handed Detective Emery a plastic baggie containing suspected heroin and Detective Emery handed CASABLANCA $1,900 in United States currency.

7.      Detective Poff then exited the undercover vehicle and was introduced to CASABLANCA and CRUZ by Detective Emery.  During the conversation, CASABLANCA and CRUZ described other types of narcotics they sell and their prices.  CASABLANCA and CRUZ also described some of the techniques they utilize in their narcotics distribution activities to avoid law enforcement detection, such as utilizing different vehicle and changing phone numbers.   Before the meeting ended, Detectives

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Emery and Poff discussed purchasing additional narcotics from CASABLANCA and CRUZ in the future.

8.     At the conclusion of the undercover operation, law enforcement impounded the purchased heroin into evidence.  Two plastic baggies of suspected heroin were contained in a larger plastic baggie.  One baggie of suspected heroin weighed 13.3 grams with packaging and the second weighed 42.8 grams with packaging.  The suspected heroin was field tested and tested positive for heroin.

9.     On March 10, 2020, Detective Emery was in contact with CASABLANCA via phone and text message.  Det. Emery had ordered four ounces of methamphetamine and 25 "blues" (suspected fentanyl pills).  CASABLANCA had relayed that the price of the methamphetamine would be two hundred and fifty dollars per ounce and that the pills would be fifteen dollars each.

10.     On March 10, 2020, Detectives Emery and Poff met CASABLANCA and CRUZ at a Shawn O'Donnell's Irish Pub located at 122 128th Street SE, in Everett, Washington.  Additional law enforcement personnel observed CASABLANCA and CRUZ arriving in the same vehicle together and entering the restaurant.

11.     In the restaurant, Detectives Emery and Poff discussed the purchase price for the methamphetamine and fentanyl pills with CASABLANCA and CRUZ and ultimately agreed upon a purchase price of $1,340.  After this discussion, CASABLANCA and CRUZ returned to their vehicle and Detectives Emery and Poff returned to their undercover vehicle and relocated to the area of the parking lot near where CASABLANCA and CRUZ's vehicle was located.

12.     CRUZ then entered the rear of the undercover vehicle and handed Detective Poff a bundle of suspected methamphetamine as well as blue M30 pills wrapped in plastic wrap.  CRUZ advised that the methamphetamine was approximately three grams over weight.  Detective Emery then paid CRUZ $1,350 dollars as no one had change.

13.     While in the undercover vehicle, CRUZ stated that she and CASABLANCA had received some firearms a few days prior and that CRUZ could speak to Detectives

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Emery and Poff at a later time if they wanted to make a purchase.  Additionally, CRUZ stated that she conducted the firearm deals because CASABLANCA is not supposed to be around firearms because of his criminal history.  CRUZ then exited the UC vehicle and returned to her vehicle where CASABLANCA was waiting.  The operation then concluded.

14.    At the conclusion of the operation, the methamphetamine and pills were impounded into evidence.  The suspected methamphetamine weighed 117.5 grams with packaging and field tested positive as such.  The pills were in a separate plastic bindle to which there were 25 pills with "M30" markings on them.  A field test of the pills found the presence of Acetaminophen (Paracetamol) but could not rule out the presence of a narcotic.  This is a common scan result when field testing pills that contain fentanyl, as Acetaminophen is a commonly used filler/binder in order to actually manufacture the counterfeit pills.

15.    On June 11, 2020, Detective Emery was in contact with CASABLANCA via phone and text messages.  During these conversations, Detective Emery ordered one hundred "blues" or "greens," which is common street vernacular for the term M30 pills which commonly contain fentanyl.  CASABLANCA agreed to sell Detective Emery the pills for the price of sixteen dollars per pill, for a total of $1,600.

16.    On June 12, 2020, Detective Emery was in communication with CASABLANCA via phone and text message.  The location of the meeting changed several times through communication with CASABLANCA.  They ultimately decided to meet at the Manor Market, located at 3609 164th Street SW, in Lynnwood, Washington.  Once at the meet location, Detectives Emery and Poff observed CRUZ arrive in a black BMW.  CRUZ exited the driver's seat of the BMW and entered the back of the undercover vehicle.  CRUZ placed a baggie of M30 pills on the center console of the front seats and Detective Emery gave CRUZ $1,600 in cash as payment for them.   While in the undercover vehicle, CRUZ stated that she and CASABLANCA go to eastern Washington quite a bit.  CRUZ further stated that she always drives as she has no criminal history and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that they have "traps" (hidden compartments) in both of their (CASABLANCA and CRUZ's) vehicles.  CRUZ additionally stated that they (CRUZ and CASABLANCA) had 8.5 kilograms or pounds of pure fentanyl hidden in their house where no one could find it. CRUZ stated she was looking into purchasing a pill press online without having it traced back to her, and she and Detective Emery had a short discussion on how he might be able to facilitate helping CRUZ make that purchase. CRUZ then departed the UC vehicle and Detectives Emery and Poff departed the deal location.

17.     At the conclusion of the operation, 100 light green pills with the markings "M30," in a tied-off plastic baggie, were impounded into evidence.  A field test of the pills found the presence of Acetaminophen (Paracetamol) and it could not rule out the presence of narcotics. As noted above, this is a common scan result when field testing pills that contain fentanyl, as Acetaminophen is a commonly used filler/binder in order to actually manufacture the counterfeit pills.

18.     On June 30, 2020, Detective Emery was in contact with CASABLANCA via phone and text message.  During these communications, CASABLANCA and Detective Emery arranged for Detective Emery to purchase two AR-15 style rifles, ammunition, a one hundred round drum magazine, and two military style smoke grenades for $5,500, as well as to purchase one hundred M30 pills for $1,600.  While negotiating the prices, CASABLANCA told Detective Emery that one of the rifles was fully automatic.

19.     On June 30, 2020, Detectives Emery and Poff met with CASABLANCA and CRUZ near the Fireplace Bar located at 2320 Everett Avenue, in Everett, Washington. Additional law enforcement officers in a surveillance capacity observed three vehicles arrive at the meet location in quick succession.  The first car was a dark blue two-door Maserati without any license plates displayed, but it appeared to be very similar to the text message pictures that CASABLANCA previously had sent to Detective Emery of his new car.  The second car was a black BMW four-door sedan bearing Washington license plate BKZ0885 (the same BMW sedan that Cruz & Casablanca had both driven during a previous operation).  The third car was a silver Toyota FJ Cruiser

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

bearing Washington license plate AXZ4767.  Law enforcement did not know at the time whether the Toyota FJ Cruiser was related to the other two.  Law enforcement subsequently reviewed the Washington State Department of Licensing database and confirmed that the Maserati was registered to CRUZ and that the Washington license plate that was associated with that vehicle was BUE1833.

20.    Surveillance officers observed the three cars pull into the alleyway behind the Fireplace Bar.  After a short time, the Maserati and BMW pulled out of the alleyway and re-located to the same parking lot where Detectives Emery and Poff were parked.  Surveillance officers observed that CASABLANCA was driving the BMW and CRUZ was driving the Maserati.

21.    After parking, CASABLANCA exited his vehicle and told Detective Emery that CASABLANCA had some power tools for Detective Emery and walked to the rear of the Maserati driven by CRUZ.  CASABLANCA opened the trunk and Detective Emery observed two tool bags inside. Detective Emery opened one of the bags and found an AR-15 style rifle wrapped inside. Detective Emery examined the gun and while checking the selector switch, found that it moved to three settings, leading Detective Emery to believe it to be a converted fully automatic rifle.  Detective Emery asked CASABLANCA if the rifle was "full," meaning fully automatic, and CASABLANCA responded that it was.  Detective Emery also commented that the barrels were short and CASABLANCA agreed.  Detective Emery then looked at the second AR-15 style firearm in the bag and CASABLANCA said this firearm was not fully automatic.

22.    CASABLANCA and Detective Emery then carried the bags over to the undercover vehicle and placed them in the vehicle.  CASABLANCA indicated that the smoke grenades were located in a green bag but due to the lack of lighting, Detective Emery did not want to manipulate them so did not examine them at the time.  CASABLANCA stated to Detective Emery that while traveling to the meet location, CASABLANCA had CRUZ drive in the middle, with another car as a lookout.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

23.     Detective Emery asked about the "blues." CASABLANCA walked over to the driver's side of the Maserati and received a baggie from CRUZ, which he handed to Detective Emery.  Detective Poff then retrieved $1,600 in cash and gave it to CASABLANCA as payment for the pills.

24.     Detectives Emery and Poff and CASBLANCA then gathered by the driver's side of the Maserati (where CRUZ was seated) and spoke with CASABLANCA and CRUZ.  The four discussed meeting with an individual named "Dan" the following day. Detective Emery had previously stated that "Dan" was a Canadian with access to a pill press. Detective Emery then provided CRUZ with the remainder of the funds $5,500 for the firearms, ammunition, and smoke grenades, which CRUZ counted.

25.     During this meeting, CASABLANCA admitted that he could not be around the firearms, which was why CRUZ drove them.  During this same conversation, Detective Emery brought up the fact that the rifles just purchased had short barrels and that they are illegal. CASABLANCA stated that all the rifles he sold would be like that. The discussion then turned toward pill presses and CASABLANCA stated they (CASABLANCA and CRUZ) had eight pounds of fentanyl. CASABLANCA and CRUZ stated that they ordered some molds for it but Detective Emery explained that their friend "Dan" had a pill press.  Later on in the conversation, CASABLANCA and CRUZ again talked about how much fentanyl to put into each pill and noted that a kilogram of their fentanyl will make 500,000 pills. In addition, CASABLANCA and CRUZ said that they have been sitting on this fentanyl for a couple of years. After making arrangements to meet "Dan" the following day at the Snoqualamie Casino to discuss future deals related to CASABLANCA and CRUZ's fentanyl, CASABLANCA then departed the location in the BMW and CRUZ departed in the Maserati.

26.     At the conclusion of the operation, all purchased items were impounded into evidence. The amount of pills in the baggie appeared to be consistent in the amount of the previous deals for the same amount.  Law enforcement also impounded the following firearms: (1) a Palmetto State Armory, Model PA-15, 5.56 caliber pistol, bearing serial

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

number  LW363080, and (2) a Smith & Wesson, model M&P-15, .223 caliber machinegun, bearing a serial number TH91174, with a barrel length of 7-5/8 inches and an overall length of 25-3/4 inches.  They also placed into evidence numerous rounds of ammunition and a high capacity drum style magazine which CASABLANCA had sold to Detective Emery, as well as (1) an M18 type violet smoke grenade and (2) an M83 type white smoke grenade.

27.     On July 1, 2020, Detectives Emery, Poff, and SRDTF Detective Rucker, who was posing as "Dan," met with CASABLANCA and CRUZ at the Snoqualmie Casino located at 37500 SE North Bend Way in Snoqualmie, Washington.  During the dinner meeting, the conversation turned to details about manufacturing counterfeit pills containing fentanyl.  At one point, CASABLANCA passed Detective Rucker an object wrapped in black fabric that appeared about the size of a folded up cocktail napkin. CASABLANCA stated, in effect, that the contents in the napkin were approximately $500 worth of the fentanyl that CASABLANCA has.  Detective Emery paid CASABLANCA $500 as payment for the sample.  During the dinner, CASABLANCA made a comment that his supply of fentanyl was hidden in the walls of his residence.

28.     At the conclusion of the operation, the suspected fentanyl was impounded into evidence.  The sample was a whitish powdery substance with some chunks in it that was in a small plastic baggie.  A field test revealed that the substance was positive for the presence of "3-fluoro Methoxyacetyl fentanyl."  A check conducted by detectives indicated that fentanyl is a Schedule II narcotic per the Drug Enforcement Administration (DEA) and that Methoxyacetyl fentanyl is a Schedule I narcotic per the DEA.  The total weight of the narcotics and packaging was 7.0 grams.

29.     On July 14, 2020, Detective Emery arranged to purchase 100 M30 pills from CASABLANCA in the parking lot of the Fred Meyer grocery store located at 15905 35th Place West, in Lynnwood, Washington. When Detectives Emery and Poff arrived at meet location, they observed CASABLANCA's Maserati and parked their undercover vehicle next to it.  After they parked, CASABLANCA exited from the driver's seat and got into

CASABLANCA and CRUZ/COMPLAINT – 11

the undercover vehicle. An unknown male, whom CASABLANCA identified as his brother, remained in the Maserati.

30. CASABLANCA then handed over a plastic baggie containing 100 blue M30 pills in exchange for $1,600 as payment from Detective Emery. Detective Emery stated he would let CASABLANCA know where the pill press would be located when he found out. In addition, during this conversation, CASABLANCA made a comment about the fentanyl being hidden inside the wall behind a huge TV in his and CRUZ's bedroom. After this brief conversation, CASABLANCA exited the undercover vehicle and Detectives Emery and Poff departed the area.

31. At the conclusion of the operation, the M30 pills were impounded into evidence. They were not field tested.

32. On July 25, 2020, CASABLANCA and CRUZ met Detectives Emery, Poff, and Cracchiolo at the Arlington Municipal Airport located at 18204 59th Avenue, in Arlington, Washington.

33. CASABLANCA and CRUZ were under the impression that Detective Cracchiolo (working in an undercover capacity) had a pill press and would assist CASABLANCA and CRUZ into pressing fentanyl pills.

34. Detectives Emery and Poff came into the airplane hangar followed by CASABLANCA while CRUZ remained outside. CASABLANCA was introduced to Detective Cracchiolo. The conversation immediately turned to fentanyl and Detective Cracchiolo stated how cautious he is about handling the substance. CASABLANCA stated that he too is very cautious about handling the substance and described how well he wrapped it up. While CASABLANCA was talking, he removed a backpack, unzipped the compartment and removed a black plastic case. Inside the case was a vacuum -sealed plastic package with a whitish colored power with chunks in it.

35. Detective Cracchiolo pointed out some of the items that were on hand to conduct the manufacturing process, including a variety of binder material. CASABLANCA produced a small plastic baggie with some counterfeit M30 pills to

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

show Detective Cracchiolo. CASABLANCA was specific about the exact color he wanted to match for this batch of pills and told Detective Cracchiolo to make sure he knew what CASABLANCA was looking for.  CASABLANCA also gave Detective Cracchiolo a bag of the matching color binder material to be used for the batch.  After this discussion, CASABLANCA placed his backpack in the trunk of the Maserati.

36.     At this point, CRUZ entered the hangar and was introduced to Detective Cracchiolo. CASABLANCA and CRUZ were then arrested by marked law enforcement officers and taken into custody without incident.

37.     Prior to the initiation of this day's operation, detectives had applied for and obtained a search warrant from a Snohomish County Superior Court judge to search the Maserati, several additional vehicles, and CASABLANCA and CRUZ's residence located at 15905 35th Place West, in Lynnwood, Washington.

38.     The contents in the vacuum sealed bag that had been inside the black plastic case was subsequently determined to weigh 496 grams with packaging (not including the hard case).  The contents field tested positive for fentanyl.

39.     The result of the search warrant on the Maserati resulted in a small amount of narcotics being seized, along with narcotics paraphernalia.  In addition, law enforcement located an A.D.C., Model 1, .45 Colt caliber/.410 bore Derringer-style pistol, with serial number 057016, behind the carpeting of the center consul on the front passenger side of the vehicle.  This firearm matched the description of a firearm that CASABLANCA had previously discussed selling to Detective Emery.

40.     Later on this same day, law enforcement executed a warrant on CASABLANCA and CRUZ's residence.  Law enforcement located digital scales with residue on the weigh plates throughout the house, along with small amounts of suspected heroin and other narcotics; items involved in the distribution of illegal narcotics, as well as numerous documents in the names of CASABLANCA and CRUZ.  Law enforcement also located, at several places in the residence, ammunition to various calibers of firearms, along with ballistic vest plates designed to protect against rifles rounds.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

41.     An unknown make and model shotgun with all identifying markings removed, as well as a Walther, Model PPS M2, 9x19mm Parabellum caliber pistol, bearing serial number AZ2878, was recovered in the master bedroom.

42.     A black zip-up piece of luggage that had an orange Nike shoebox in it was found in the master bathroom linen closet.  Inside the shoebox were four vacuum-sealed packages (one blue and three white).  The blue package was suspected pill binder that matched the pill binder that CASABLANCA had brought to the airport.  The white packages field tested positive for fentanyl and weighed 194 grams, 302 grams, and 576 grams individually, with packaging.

43.     In addition, law enforcement recovered a brown box containing three vacuum-sealed bags of heroin from the master bedroom.  The bags weighed 262 grams, 217 grams, and 315 grams, with packaging.  The bag containing 262 grams of suspected heroin was field tested positive as such. Law enforcement also seized numerous pieces of mail addressed to both CASABLANCA and CRUZ from the master bedroom.

44.     On or about July 7, 2020, I sent the Smith & Wesson, model M&P-15, .223 caliber suspected machinegun, bearing a serial number TH91174, with a barrel length of 7-5/8 inches and an overall length of 25-3/4 inches to  ATF's Firearm Technology Branch (FTB) for analysis.

45.     The conclusion of FTB is as follows:

a.     The above submitted firearm, being a weapon which will expel a projectile by the action of an explosive and incorporating the receiver of such a weapon, is a "firearm" as defined in 18 U.S.C. § 92l(a)(3)(A)&(B).

b.     The above mentioned firearm is a weapon which shoots automatically more than one shot, without manual reloading, by a single function of the trigger; further, it incorporates the receiver of such a weapon. Therefore, it is a "machinegun" as defined in 26 U.S.C. § 5845(b).

c.     The above mentioned firearm is a "machinegun" as defined in 18 U.S.C. § 92l(a)(23).

d.     The above mentioned firearm**,** being a "machinegun," is a "firearm" as defined in 26 U.S.C. § 5845(a)(6).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.     The above mentioned firearm bears no NFA manufacturer's marks of identification as required by 26 U.S.C. § 5842.

46.     After taking the unknown make and model shotgun (from the residential search warrant) into ATF custody on July 28, 2020, I measured the firearm and found the barrel length to be 14-5/8 inches long with an overall firearm length to be 25-3/4 inches long, thus subjecting the firearm to National firearms Act regulations.

47.     On August 4, 2020, I requested a query of the National Firearm Registration and Transfer Record in the names of CASABLANCA, CRUZ, and for the machinegun described above.  The result of the query was that there is no record on CASABLANCA, CRUZ, or the above mentioned machinegun being or having any weapons registered.

48.     I have reviewed court records from the Snohomish County Superior Court, and therefore am aware that Jose CASABLANCA has been convicted of the following felony offenses:

i.     *Robbery in the First Degree and Burglary in the First Degree,* in cause number 06-1-01575-9, in the Superior Court of Snohomish County, on or about August 30, 2006; and

ii.     *Possession of a Controlled Substance with Intent – Cocaine,* in cause number 11-1-00365-0, in the Superior Court of Snohomish County, on or about September 1, 2011;

49.     ATF Special Agent Catherine Cole, an agent who is an expert at conducting interstate nexus reviews, has determined that the firearms referenced in Counts One and Two were manufactured outside of the State of Washington, and therefore had traveled in interstate and/or foreign commerce.

a.     The Palmetto State Armory, Model PA-15, 5.56mm NATO caliber pistol, with serial number LW363080, was assembled by Palmetto State Armory in the State of South Carolina. The lower receiver was manufactured for Palmetto State Armory by L.W. Schneider, Inc. in the State of Illinois.

b.     The A.D.C., Model 1, .45 Colt caliber/.410 bore Derringer-style pistol, with serial number 057016, was manufactured by American Derringer Corporation in the State of Texas.

CASABLANCA and CRUZ/COMPLAINT – 15

c.     The Walther, Model PPS M2, 9x19mm Parabellum caliber pistol, with serial number AZ2878, was manufactured by Carl Walther GmbH Sportwaffen in Germany and imported into the United States by Walther Arms, Inc. in the State of Arkansas.

//

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

Based upon the foregoing and my training and experience, I respectfully submit there is probable cause to believe that JOSE L. CASABLANCA and JESSIE N. CRUZ committed the offenses set forth above in this Complaint.

*Matthew Wear*
_____
Matthew P. Wear
Special Agent, ATF

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit, and based on the Complaint and Affidavit, the Court hereby finds that there is probable cause to believe that the Defendant committed the offenses set forth in the Complaint.

_____
THE HONORABLE PAULA L. McCANDLIS
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE5220
SEATTLE, WASHINGTON 98101
(206) 553-7970